# No. 19-16450

IN THE

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**DANIEL M. COSTON,**
*Plaintiff-Appellant,*

*v.*

**ANDREW NANGALAMA; RONALD HALE, Licensed Vocational Nurse,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA
MORRISON C. ENGLAND, JR., DISTRICT JUDGE · CASE NO. 2:10-CV-02009-MCE-EFB

# APPELLANT'S PRO BONO REPLY BRIEF

| **HORVITZ & LEVY LLP** | **MCLANE, BEDNARSKI & LITT, LLP** |
|---|---|
| BARRY R. LEVY | CAITLIN S. WEISBERG |
| EMILY V. CUATTO | 975 EAST GREEN STREET |
| 3601 WEST OLIVE AVENUE, 8TH FLOOR | PASADENA, CALIFORNIA 91106 |
| BURBANK, CALIFORNIA 91505-4681 | (626) 844-7660 |
| (818) 995-0800 | |

**UCLA SCHOOL OF LAW**
**NINTH CIRCUIT APPELLATE ADVOCACY**
**PRISONERS' RIGHTS CLINIC**
AARON LITTMAN
ALBERTO DE DIEGO CARRERAS (CERTIFIED LAW STUDENT)
AMARIS MONTES (CERTIFIED LAW STUDENT)
385 CHARLES E. YOUNG DRIVE EAST
1242 LAW BUILDING, ROOM 3472
LOS ANGELES, CALIFORNIA 90095
(310) 825-9562

ATTORNEYS FOR PLAINTIFF-APPELLANT
**DANIEL M. COSTON**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................. 3

I.    It was prejudicial error for the court to direct the jury to defer to prison officials in this medical care case; Defendants have only partially contested Plaintiff's assertion of error and have not at all contested that the error was prejudicial. ......... 3

    A.    Review of the deference instruction is de novo because it involves an error of law. ................................................... 3

    B.    It was error to provide the deference instruction because the termination of Coston's medication was not connected to any bona fide security concern and, even if it was, Defendants' response was exaggerated. ..................... 5

    C.    Defendants cannot, and have not even attempted to, show that the instructional error was harmless. ................. 10

II.    Proceeding with the trial despite Hale's sudden unavailability prejudiced Coston given the materiality of Hale's testimony to his claims. ...................................................... 11

III.    The court's comments to the jury regarding Defendants' absences were an abuse of discretion because there were alternatives, including one articulated by the court, that would have spared both parties any prejudice. ............................ 15

IV.    The district court erred by excluding the prison's medication management policy, which was plainly relevant, because it supported Coston's argument that Defendants both lacked a bona fide security concern and responded in exaggerated fashion, and admission of the policy would not have prejudiced Defendants. ............................................................. 18

V. Defendants argue that the jury verdict is supported by substantial evidence, but this is irrelevant to the issues raised in this appeal. ................................................................. 22

    A. Defendants cannot meet their burden on harmless error by way of a substantial evidence argument. ............... 22

    B. Given the impact of the court's errors, Defendants' contention that the evidence was overwhelmingly in their favor also fails to meet their burden on harmless error. ............................................................................... 26

CONCLUSION ................................................................................. 28

CERTIFICATE OF COMPLIANCE ...................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Akhtar v. Mesa,*
  698 F.3d 1202 (9th Cir. 2012) ............................................................. 14

*Caballero v. City of Concord,*
  956 F.2d 204 (9th Cir. 1992) ............................................................... 26

*Chess v. Dovey,*
  790 F.3d 961 (9th Cir. 2015) ........................................................ 4, 5, 8

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.,*
  260 F.3d 742 (7th Cir. 2001) ................................................................. 6

*Clem v. Lomeli,*
  566 F.3d 1177 (9th Cir. 2009) ....................................................... 10, 22

*Cortez v. Skol,*
  776 F.3d 1046 (9th Cir. 2015) ............................................................. 20

*Dang v. Cross,*
  422 F.3d 800 (9th Cir. 2005) ................................................................. 4

*Gantt v. City of Los Angeles,*
  717 F.3d 702 (9th Cir. 2013) ............................................................... 22

*Jordan v. Gardner,*
  986 F.2d 1521 (9th Cir. 1993) ............................................................... 9

*Kennedy v. S. Cal. Edison Co.,*
  268 F.3d 763 (9th Cir. 2001) ............................................................... 23

*Maheu v. Hughes Tool Co.,*
  569 F.2d 459 (9th Cir. 1977) ......................................................... 16, 17

*Mendiola–Martinez v. Arpaio,*
  836 F.3d 1239 (9th Cir. 2016) ........................................................... 4, 6

iii

*Norwood v. Vance,*
 591 F.3d 1062 (9th Cir. 2010)............................................................ 4

*Pac. Greyhound Lines v. Zane,*
 160 F.2d 731 (9th Cir. 1947)........................................................... 26

*Quercia v. United States,*
 289 U.S. 466 (1933).................................................................. 16, 17

*Shorter v. Baca,*
 895 F.3d 1176 (9th Cir. 2018)......................................................... 4, 6

*Tattersalls, Ltd. v. DeHaven,*
 745 F.3d 1294 (9th Cir. 2014)............................................................ 5

*United States v. Bland,*
 908 F.2d 471 (9th Cir. 1990)........................................................... 17

*Wilkerson v. Wheeler,*
 772 F.3d 834 (9th Cir. 2014)............................................................. 3

## Rules

Fed. R. Civ. P. 50.............................................................................. 23

Fed. R. Evid. 403 ........................................................................ 20, 21

## Miscellaneous

Ninth Circuit Manual of Model Civil Jury Instructions § 9.27
 (2017)............................................................................................ 3

iv

# APPELLANT'S PRO BONO REPLY BRIEF

## INTRODUCTION

Coston's opening brief identified four errors committed by the district court that caused Coston substantial prejudice in his deliberate indifference case against Defendants, and thus require reversal. Rather than grappling with Coston's arguments, Defendants' answering brief responds in a conclusory fashion, failing to engage with the relevant law and how it applies to the facts of the case.

Defendants' position seems to be that they are entitled to the verdict they received because there was evidence that Coston retained and passed some of his medication, meaning that he must not have been taking it at all; therefore, terminating the prescription was justified as a security measure that would cause Coston no harm. But this restatement of Defendants' closing argument has no role to play in this appeal raising evidentiary and instructional errors. It also rests on Defendants' own myopic (and at times inaccurate) view of evidence, which the jury was not required to believe. Coston had his own, quite different story to tell, which the jury could also have believed. Precisely because of the instructional and evidentiary errors below, we cannot

know in whose favor the jury would have resolved the competing narratives.

Indeed, the very core of this case is whether Defendants' decision to terminate Coston's medication was justified on the basis of their security concerns relative to its impact on Coston's health. But that question was taken from the jury when it was instructed to defer to Defendants' judgment if Defendants claimed a security concern. Had the jury been properly instructed, it would have interrogated Defendants' purported security justification and could have concluded that no security concern existed or that Defendants' response was exaggerated. The jury would have found significant support for either conclusion in the current record and even more in the evidence that was erroneously excluded: the prison's medication management policy and Hale's testimony. And the jury would have been yet more likely to find for Coston had its sympathies not been stirred in Defendants' favor by the court's commentary regarding their absence.

In sum, it is reasonably likely that the defense verdict in this case resulted from the variety of legal errors committed by the court, which dramatically undermined the strength of Coston's evidence, rather than

2

from any strength in Defendants' evidence. This is the very essence of prejudice. Thus, Coston urges this Court to reverse and remand so that he may finally receive a fair trial.

## ARGUMENT

I. **It was prejudicial error for the court to direct the jury to defer to prison officials in this medical care case; Defendants have only partially contested Plaintiff's assertion of error and have not at all contested that the error was prejudicial.**

   A. **Review of the deference instruction is de novo because it involves an error of law.**

As explained in the opening brief, this Court reviews de novo the district court's decision to give the bracketed portion of Ninth Circuit Manual of Model Civil Jury Instructions § 9.27 (2017), which directs the jury to give deference to prison officials "in the adoption and execution of policies and practices that in their judgment are needed to preserve discipline and to maintain internal security." (*See* AOB 23.)

Defendants incorrectly assert that the Court should review for abuse of discretion. (AB 13.) While this Court reviews the phrasing of jury instructions for abuse of discretion, *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014), the issue raised here is not one of phrasing.

Coston challenges the deference instruction as either wholly inapplicable to his Eighth Amendment medical care claim, or incomplete because it did not instruct the jury (consistent with applicable substantive law) *not* to defer to prison officials where their response to any security concern was exaggerated. (AOB 23–33.) Claims that a jury instruction misstated the law are reviewed de novo. *See Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005); *see also id.* at 805 ("[P]rejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." (citation omitted)).

In every case regarding the specific deference instruction at issue here, this Court has applied de novo review. *See Shorter v. Baca*, 895 F.3d 1176, 1182 (9th Cir. 2018) ("Because [the appellant] challenges the resulting jury instruction as an incorrect statement of law, our review is de novo."); *see also Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1247, 1257 (9th Cir. 2016); *Chess v. Dovey*, 790 F.3d 961, 970 (9th Cir. 2015); *Norwood v. Vance*, 591 F.3d 1062, 1066–67 (9th Cir. 2010). Defendants

do not offer any reason why the Court should deviate from this consistent treatment.[1]

**B. It was error to provide the deference instruction because the termination of Coston's medication was not connected to any bona fide security concern and, even if it was, Defendants' response was exaggerated.**

The opening brief explained that the deference instruction did not apply to this case because Defendants' termination of Coston's medication was not tied to a bona fide security concern once they confiscated the excess pills from his cell, and, even if it was, Defendants' decision was exaggerated because they had a variety of treatment options that would have both prevented harm to Coston and preserved institutional security. AOB 28–32; *see Chess*, 790 F.3d at 974.

Defendants briefly address this Court's decision in *Chess*, (AB 13–14), and concede that the deference instruction is usually inappropriate in medical care cases, (AB 14), but fail to explain why this case should be treated differently. More significantly, they fail to even cite, much less contend with, this Court's binding precedent establishing that even

---

[1] In any event, committing an error of law in instructing a jury is an abuse of discretion. *See Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014).

if a security concern is identified, the deference instruction should not be given in cases like this one where a plaintiff presents substantial evidence that a prison official's response goes beyond what is justified by the security need, *Shorter*, 895 F.3d at 1183, or that the instruction must at least be supplemented by an additional instruction that the jury should not defer to the prison official's judgment if the plaintiff shows that there is a material dispute as to whether their response was exaggerated, *Mendiola–Martinez*, 836 F.3d at 1257. Finally, consistent with their failure to acknowledge the foregoing authority, Defendants completely ignore the extensive factual analysis in the opening brief demonstrating that the termination decision in this case was an exaggerated response to the security concerns they identified. (AB 15; *see* AOB 31–33.)

By not responding to Coston's argument that the exaggerated response evidence made the deference instruction inappropriate, Defendants have, in effect, conceded that the instruction was improper. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (finding that by failing to mention or respond to a claim that is not frivolous, the appellee acquiesces, "operat[ing] as a waiver").

6

Ultimately, Defendants' entire defense of the deference instruction rests on the fact that Coston retained and passed pills in violation of prison policy. (AB 15.) It is obviously true, and Coston does not dispute, that having excess pills and passing pills are rules violations and raise security concerns. (1-ER-209.) As previously discussed, Defendants removed the pills immediately, and Coston was formally disciplined by prison officials when they deprived him of sentencing credits, curtailed visitation privileges, and required him to undergo drug testing. (AOB 7.) But Defendants seek to use the rules violations to justify any and all responses to the violation, altogether ignoring the opening brief's argument that any legitimate security concerns were resolved by the simple act of removing the excess pills and complying with the prison's Direct Observation Therapy ("DOT") policy moving forward. (*See* AOB 29–30; AB 15.) The rules violations, and the security concerns posed by them, did not require terminating the prescription or ignoring Coston's subsequent medical complaints. (*See* AOB 29–30.)

If Defendants had testified that they believed Coston was cheeking pills and that nothing short of terminating medication would be sufficient to mitigate the prison's security concern about retaining

and passing pills in the future, that might have gotten them closer to connecting their termination of the medication to the security concern, the threshold requirement dictated by *Chess*. But that was not their testimony. To the contrary, their own colleague testified that prison officials did not believe Coston was cheeking pills based on the physical condition of the pills when they were found. (AOB 32; 1-ER-195.) This leaves Coston's explanation as one that the jury could have believed was strongly supported by the evidence: that Hale was leaving pills in Coston's cell instead of delivering them according to DOT. (AOB 14–15.) Any security concerns would therefore have been addressed by watching Coston take his pills pursuant to DOT policy. Even if there were still concerns that Coston could cheek pills, there were various methods of providing Coston with medication outlined in the prison's medication management policy that make cheeking impossible, such as crushing pills or providing medications in liquid form. (AOB 29–30, 59; 2-ER-410.)

Instead, Defendants chose to terminate Coston's prescription cold turkey and failed to provide follow up care, (AOB 7, 29–30), disregarding Coston's countervailing constitutional right to medical

8

care and the serious risk of withdrawal. *See Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993) (finding that a prison official was deliberately indifferent because he had an "exaggerated regard for pragmatic interests of lesser significance and a lack of proper concern for the serious infringement of a counter-vailing constitutional [medical] interest"). Indeed, as previously discussed, Nangalama himself testified that he would not usually end someone's pain medication cold turkey. (AOB 30.) Nangalama did not say whether he considered, much less why he rejected, the various medical alternatives to discontinuation that would have provided appropriate care to Coston while also preventing future retention and passing of pills.

This is substantial evidence that, even if Defendants had a security concern, the discontinuation of Coston's medication was either disconnected to that concern or was an exaggerated response to it. As such, no deference instruction should have been given. At the very least, it was necessary for the court to provide a supplemental instruction for the jury that it should not defer to Defendants if it concluded that Defendants' response was exaggerated. Either way, the result is the

9

same: The jury that decided this case was incorrectly instructed on the governing law, which is reversible error.

### C. Defendants cannot, and have not even attempted to, show that the instructional error was harmless.

"An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (citations omitted). Defendants bore the burden of showing that the instructional error was harmless, *id.*, but failed to offer any argument on the issue, (*see* AB 13–15), much less meet their burden. Indeed, Defendants' failure to respond to Ninth Circuit authority describing the deference instruction as akin to a directed verdict, (*see* AOB 28)—or make any effort to distinguish it— waives the issue of the error's harmlessness altogether. *Clem*, 566 F.3d at 1182 (finding that the appellee waived the issue of harmlessness because he failed to advance any argument or identify any evidence to support a harmless error finding).

In any event, Defendants cannot show harmlessness. After all, based on the deference instruction, the jury deliberated with the understanding that so long as Defendants justified their actions with a security concern, it must find for Defendants no matter what else it

10

concluded. In other words, even if it believed that Coston needed the medication and suffered withdrawal, that he was not cheeking pills, and that alternatives like liquid morphine existed which would make cheeking and passing pills impossible in the future, the jury would have nevertheless understood that it was required to defer to Defendants' judgment once Defendants identified a purported security justification for their actions.

As such, the deference instruction told the jury to abdicate its primary responsibility in the case—that is, to critically examine Defendants' judgment and determine whether, in light of all the evidence, their decision was acceptable under the circumstances or was instead an unconstitutional manifestation of deliberate indifference to Coston's serious medical needs. Far from harmless, the instructional error effectively directed the verdict against Coston.

## II. Proceeding with the trial despite Hale's sudden unavailability prejudiced Coston given the materiality of Hale's testimony to his claims.

As explained in the opening brief, (AOB 42–43), even aside from being a defendant, Hale was an important witness because of his role at three critical junctures: administering the medication, discontinuing

11

the medication, and allegedly failing to provide adequate follow-up care, (1-ER-150, 153; 2-ER-312–13). Hale testified briefly only to the second juncture before his testimony was abruptly cut short. (1-ER-158.) But the first and third junctures were central to Coston's claims and to his rebuttal of Defendants' representation that they terminated the prescription because they believed Coston was not taking the medication at all. (AOB 42–48.) Coston lost the opportunity to effectively challenge several of the premises underlying the defense because he was not allowed to elicit testimony from Hale as to whether: (1) Coston consumed his medication when Hale delivered it in compliance with DOT; (2) Hale delivered medication to Coston's empty cell, corroborating Coston's explanation of why he had pills in his cell; and (3) Hale observed Coston experiencing withdrawal symptoms after his morphine was terminated.

By denying Coston a mistrial and not even considering a continuance, the district court abused its discretion: Either option would have preserved Coston's right to present his case, sparing him substantial prejudice while potentially causing little inconvenience to the court, parties, and witnesses. (AOB 42–53.)

12

Defendants' sole response is that Coston did not make an offer of proof as to what relevant testimony he still needed from Hale. (AB 16.) But as explained at length in the opening brief, Coston did just that. (AOB 44.) He explained to the court that he wished to elicit testimony from Hale regarding: (1) Hale's delivery of the pills to Coston's empty cell before the discontinuation, (1-ER-163); and (2) Hale's conduct and interactions with Coston "after [the] discontinuation," (1-ER-161).

As to the first, Defendants conclude—without explanation and without addressing the points made in the opening brief—that such testimony was not relevant to a claim of medical deliberate indifference. (AB 16.) But as explained in the opening brief, whether Hale delivered pills to Coston's empty cell is directly relevant to whether Defendants' response was exaggerated and thus deliberately indifferent: If Defendants were aware that Coston was only retaining the medication that was delivered to his empty cell, then they knew the security concern was addressed by removing the pills and adhering to the proper method of delivery (DOT) in the future, and they further knew that terminating the medication cold turkey was both unnecessary and medically harmful. (AOB 45–46.)

13

As to the time period after discontinuation, Defendants are altogether silent. This is unsurprising; testimony from a defendant nurse regarding his recognition of withdrawal symptoms and his lack of follow-up care is undeniably relevant to a claim of medical deliberate indifference.

In substance, then, Coston's offer of proof communicated precisely what it needed to. But even if his offer was less than perfectly clear, it should have been construed liberally given that Coston was a pro se litigant. *See Akhtar v. Mesa*, 698 F.3d 1202, 1208–09 (9th Cir. 2012) ("[T]he failure to consider a plaintiff's status as a pro se litigant is a ground for concluding that the district court abused its discretion."). Doing so should not have been a difficult task: Throughout the litigation and the trial, Coston repeatedly reminded the court that Hale was vital to far more than the discontinuation itself, (1-ER-64; 2-ER-312–13, 394), a fact which Defendants' answering brief also ignores.

Defendants insist that "[t]he testimony was that Nurse Hale was no more than a messenger." (AB 2.) This is plainly not so.[2] But to the

---

[2]  Boggs' testimony, for example, strongly suggested that Hale played an active role by leaving pills in Coston's empty cell. (*See* 1-ER-195–96.)

14

extent that Hale's own testimony was thus limited, it is precisely because Hale was excused before Coston could examine him regarding his role in improperly delivering morphine to Coston's empty cell and in disregarding Coston's withdrawal symptoms. This significantly impaired Coston's right to present his case and rebut the defense. The court's decision to proceed without Hale—without even considering the alternatives or weighing the relevant factors, (AOB 38–40)—was an abuse of discretion and requires reversal.

Indeed, Defendants make no effort to contest the appropriateness of a mistrial or continuance. They offer no response to the opening brief's discussion of the factors that courts should consider when deciding whether to grant a continuance, (*see* AOB 40, 49–51), nor do they respond to the argument that a court's failure to consider alternatives is itself an abuse of discretion, (AOB 38–40).

## III. The court's comments to the jury regarding Defendants' absences were an abuse of discretion because there were alternatives, including one articulated by the court, that would have spared both parties any prejudice.

Coston suffered undue prejudice when the court explained to the jury that one Defendant was absent because his mother was dying, (1-ER-164, 189), and the other was absent because he was saving people,

15

perhaps even the jurors' loved ones, from a fire, (1-ER-189). This commentary introduced extraneous information about Defendants which no doubt would have been excluded if offered by a party and which stirred the jury's sympathies in favor of Defendants. (AOB 54–57.) Coming from the court itself, the impact of that information was likely even greater. (*Id.*)

None of Defendants' three responses have merit. First, Defendants contend that the court merely exercised its power to comment on the evidence and control its presentation. (AB 18–20.) But the court here was doing neither. Instead, the court *added* irrelevant and prejudicial information. (AOB 54–57.) Where the court's commentary extends beyond the evidence itself and effectively amounts to a "character reference" for a party, as it did here, such commentary is reversible error. *See Maheu v. Hughes Tool Co.*, 569 F.2d 459, 472 (9th Cir. 1977); *see also Quercia v. United States*, 289 U.S. 466, 470 (1933) ("[The judge] may analyze and dissect the evidence, but he may not either distort it or *add* to it." (emphasis added)).

Second, Defendants assert that any error was cured when the court instructed the jury—hours later and without reference to the

16

prejudicial commentary, (1-ER-284–85)—that all matters of fact were for their determination. (AB 18.) But even when such instructions are offered contemporaneously, they do not invariably cure such errors. *See, e.g., Maheu*, 569 F.2d at 472; *United States v. Bland*, 908 F.2d 471, 473 (9th Cir. 1990). In fact, the very case Defendants rely on for this proposition is actually a case that holds that such an instruction did *not* cure the error. *See Quercia*, 289 U.S. at 472. Here, the generic instruction was simply too general and too remote to have neutralized the prejudice from the court's statements.

Finally, Defendants argue that "[i]t would have been prejudicial to [them] to not give *any* explanation for [their] absence," (AB 20 (emphasis added)), and surmise that the court simply "weighed [that] prejudice," (AB 19). But, of course, this is a strawman that no one has suggested. The opening brief clearly explains that "the court could have simply stated that Defendants had to leave due to unforeseen circumstances and that the jurors were not to draw any adverse inferences from their absence." (AOB 55.)

In fact, outside the presence of the jury, the court itself proposed a sanitized explanation that both parties appeared to be satisfied with.

17

When Coston asked the court what it intended to tell the jury regarding Nangalama's absence, the court replied: "That he has been called away; So he won't be here." (1-ER-188.) Defendants observe that Coston did not object to this. (AB 19.) But this is because there was nothing to object to. Such an explanation would have avoided any prejudice to Defendants caused by their own absence while at the same time avoiding unnecessary prejudice to Coston. Judging by the fact that Defendants themselves raised no objections, it would seem they agreed.

The court's decision to gratuitously inflame the jurors' sympathies, using language dramatically different from the bland and unobjectionable statement it proposed to the parties, was a prejudicial abuse of discretion and requires reversal.

**IV. The district court erred by excluding the prison's medication management policy, which was plainly relevant, because it supported Coston's argument that Defendants both lacked a bona fide security concern and responded in exaggerated fashion, and admission of the policy would not have prejudiced Defendants.**

As discussed in the opening brief and above, the prison's medication management policy directs prison officials to use a series of intermediate steps short of terminating medication when a patient is noncompliant, including providing the medication in alternative forms,

18

providing counseling, and adjusting medication. (AOB 59.) Had it been admitted over Defendants' relevance objection, it would have supported Coston's argument that abruptly terminating his prescription was not motivated by bona fide security concerns and was an exaggerated response because abrupt termination of medication for noncompliance is contrary to the prison's own policy. (AOB 60.)

Defendants concede that Dr. Bal testified that there are clinical based guidelines to guide physician decisions. (AB 27.) Yet they assert that the policy was nonetheless irrelevant because Bal asserted that it is ultimately up to the primary care physician to consider all contributing factors for a patient's treatment plan, suggesting that medical officials can disregard the policy indiscriminately simply because they are vested with clinical judgment. (AB 21.) It is unclear why Defendants think this testimony supports excluding the policy as irrelevant. To the extent Defendants are suggesting the policy would have been cumulative, (AB 21), the policy was the opposite of cumulative of Bal's testimony. The policy would have impeached Bal, since it supports the conclusion that the prison does not in fact allow medical professionals to abruptly terminate medication for

19

noncompliance but instead directs them to take intermediary steps before doing so. Such impeachment evidence would have been highly probative.

Furthermore, even if the jury believed Bal's testimony that doctors can diverge from the policy based on a prisoner's specific medical needs, prison policies would nonetheless be directly relevant in helping the jury decide whether prison medical staff acted consistent with an established standard of care. *See Cortez v. Skol*, 776 F.3d 1046, 1052–1053 (9th Cir. 2015). The medication policy would have outlined for the jury the factors that, according to the prison itself, should be considered when determining a proper course of treatment, including appropriate responses to noncompliance. (AOB 59–60.) The jury could have concluded that even if Defendants were permitted to deviate from the policy at times, their failure to take (or even consider) *any* intermediate steps before terminating Coston's medication, as directed by policy, suggested their response was exaggerated.

Defendants also assert that the probative value of the policy was substantially outweighed by each of the countervailing factors listed in Federal Rule of Evidence 403, without focusing on any particular factor

20

or providing any explanation whatsoever. (AB 21.) Defendants never made a Rule 403 objection at trial, and the district court did not exclude the policy on that ground. (1-ER-119.) Nor do Defendants make any effort to support the raising of such an objection for the first time on appeal. In any event, it would be difficult to imagine any cogent explanation why admitting Defendants' *own* policy would have unduly prejudiced them or run afoul of any of the other Rule 403 considerations.

In fact, the exclusion of the policy was highly prejudicial to Coston—an issue that Defendants likewise do not address. Excluding the policy prevented Coston from presenting uniquely compelling evidence that Defendants were aware of ways to respond to the presence of pills in Coston's cell that did not risk harm to Coston and were consistent with the security needs of the prison. In its absence, the jury was left with the impression that medical staff either had no options other than discontinuation or had no knowledge of alternatives to discontinuation. The policy would have disabused the jury of this impression and put the onus on Defendants to explain why they

21

disregarded the policy. The erroneous exclusion of the policy was not harmless.

## V. Defendants argue that the jury verdict is supported by substantial evidence, but this is irrelevant to the issues raised in this appeal.

### A. Defendants cannot meet their burden on harmless error by way of a substantial evidence argument.

Defendants argue that the jury verdict should remain undisturbed because it was supported by substantial evidence. (AB 21–22.) This argument is misplaced. Although Coston, when he was pro se, moved for a new trial based on insufficiency of the evidence, (2-ER-571), he did not raise that issue on appeal.

To prevail on the instructional and evidentiary issues raised in this appeal, Coston need not prove that the evidence was insufficient to support a defense verdict; rather, the instructional and evidentiary errors require reversal unless Defendants show they were harmless. *See Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (stating that in a civil appeal, the appellee bears the burden of overcoming a presumption of prejudice). Because Defendants have altogether failed to argue harmlessness, they have waived any such argument. *Clem*, 566 F.3d at 1182.

22

Even setting waiver aside, "[i]n harmless error review, unlike sufficiency of the evidence review, the 'prevailing party is *not* entitled to have disputed factual issues resolved in his favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations in favor of the prevailing party.'" *Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001) (citation omitted). Thus, by relying on a substantial evidence standard that flips and eases the appellee's burden, Defendants fall short of making the required showing under harmless error review.

In fact, because the substantial evidence standard assumes a dispute in the facts, Defendants effectively concede that the facts of this case—most importantly, whether Coston was taking his medication and suffered withdrawal, and whether Defendants knew it—were in meaningful dispute at trial. And, indeed, they were.[3]

For example, while Defendants insist that the pills in Coston's cell meant that Coston was not taking the medication,[4] meaning there

---

[3] Defendants' Federal Rule of Civil Procedure 50 motion for a directed verdict was denied. (1-ER-218–19.)

[4] Defendants assert that 50 out of a total of 90 pills were found in Coston's cell and that this indicates that Coston was not taking the pills

23

would be no harm in terminating it, (AB 15, 21), Coston offered evidence to show that the pills were there because Hale improperly left them in his empty cell and that he was taking the medication when it was properly delivered to him, (AOB 17). Had he been permitted to complete his examination of Hale, he could have offered direct evidence on these points.

Similarly, while Defendants insist that Coston suffered no withdrawal, Coston offered evidence—and could have offered more had he been permitted to complete his examination of Hale—suggesting otherwise. Not only was Coston found on the floor of his cell, perspiring and covered in his own vomit, (2-ER-340), Hale allegedly recognized that Coston looked unwell only a few days after the discontinuation, (2-

---

at all. (AB 5–6.) But they explain neither their logic nor their math. First, even if their math were correct, nearly half of those 90 pills were *not* found in Coston's cell, and Coston's assertion was that he consumed the pills that were not found in his cell, giving rise to a risk of withdrawal from abrupt discontinuation. Second, Defendants' math is simply not correct. Coston was prescribed morphine on September 25, 2007, to be administered twice a day. (AOB 5; AB 5.) When it was discontinued 174 days later, (AOB 6–7), Coston would have been administered a total of 348 pills, almost four times as many as Defendants claim (90 vs. 348), and almost nine times as many as were missing from his cell (40 vs. 348).

24

ER-313). As Hale is a medical professional with ample experience observing patients, this would have suggested that Coston indeed experienced withdrawal.[5]

Given these disputed facts,[6] Defendants cannot show that the instructional and evidentiary errors that deprived Coston of his ability to present a complete and compelling case to a correctly instructed jury were harmless. A properly instructed jury reviewing a more robust record may well have rendered a verdict for Coston.

---

[5] Defendants take issue with Coston's failure to offer "medical evidence" of harm following termination, (AB 21), but evidence from the nurse whom this pro se incarcerated plaintiff saw during the relevant time period was precisely the medical evidence he wished to present (and the only such evidence available).

[6] Defendants also claim that Coston had twenty-four-hour access to medical care and that he was given alternative medications including Neurontin and Ibuprofen to treat him after being sent to the hospital. (AB 6.) Coston strongly contests these claims. According to Coston, individuals may only access medical providers in the Administrative Segregation Unit (ASU), where Coston lived, within a ten-to-fourteen-day period, a far cry from twenty-four-seven access to care. (1-ER-207.) Furthermore, Coston contends he never received the alternative medication, (2-ER-352), as further indicated by his continuous medication requests describing continued pain, (2-ER-501, 512, 526, 528).

**B. Given the impact of the court's errors, Defendants' contention that the evidence was overwhelmingly in their favor also fails to meet their burden on harmless error.**

Defendants conclude their discussion of substantial evidence by arguing that the defense verdict reflects that the evidence in their favor at trial was overwhelming and that the jury did not believe Coston's testimony. (AB 21–22.) This argument is without merit.

First, the jury's verdict was a general verdict. There is no way of knowing what conclusions the jury did or did not draw. This Court has recognized that instructional errors are more probably than not prejudicial and require reversal where "nothing about [the] verdict indicates that the result would have been the same without the error." *See Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992) (contrasting cases where, for example, an award of punitive damages suggests that the court's failure to instruct on reasonableness was harmless because the jury found the conduct to be more than unreasonable); *see also Pac. Greyhound Lines v. Zane*, 160 F.2d 731, 737 (9th Cir. 1947) (finding that the instructional error could be deemed harmless only "[h]ad there been a special or fact-verdict, or if the general verdict had been coupled with answers to fact-interrogatories"

26

that would suggest the verdict would have been the same without the error).

As stated above, (*supra* Section I.C), Defendants fail to appreciate that the instructional error acted as a death knell for Coston's case because even if the jury believed his version of events (that he was taking the medication, had excess pills only because they were occasionally left in his cell, and did suffer adverse health effects from being cut off cold turkey), it was commanded to find for Defendants simply because they asserted a security-based rationale for their actions. Thus, the error—not the purportedly overwhelming evidence in Defendants' favor—dictated the outcome.

Moreover, the evidentiary trial record that Defendants claim was overwhelmingly in their favor was, as made clear in this appeal, missing key evidence in Coston's favor. The evidence that was erroneously excluded—Hale's testimony regarding his delivery of pills to Coston's empty cell and Coston's condition after discontinuation, as well as the prison's medication management policy prescribing more moderate alternatives to handling noncompliance—very well could have shifted the weight of the evidence.

27

The instructional error—compounded by the erroneously excluded evidence, not to mention the court's remarks regarding Defendants' absence—virtually guaranteed a defense verdict. The errors individually and cumulatively were thus far from harmless.

## CONCLUSION

For the foregoing reasons, Coston respectfully requests that this Court reverse the judgment and remand for a new trial.

March 15, 2021

**HORVITZ & LEVY LLP**
  BARRY R. LEVY
  EMILY V. CUATTO
**MCLANE, BEDNARSKI & LITT, LLP**
  CAITLIN S. WEISBERG
**UCLA SCHOOL OF LAW**
**NINTH CIRCUIT APPELLATE**
**ADVOCACY PRISONERS' RIGHTS**
**CLINIC**
  AARON LITTMAN
  ALBERTO DE DIEGO CARRERAS
  AMARIS MONTES

By:        s/ Emily V. Cuatto

Attorneys for Plaintiff-Appellant
**Daniel M. Coston**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 19-16450

I am the attorney or self-represented party.

**This brief contains** | 5,423 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Emily V. Cuatto     **Date** | Mar 15, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 08**     *Rev. 12/01/2018*